# Eason, *et al. v.* Roe, *et al.*

*Bill to Enjoin Ejectment and for Specific Performance.*

(Decided December 4, 1913.   64 South. 55.)

1. *Equity; Bill; Jurisdictional Averments.*—A bill for specific performance should distinctly and definitely aver the terms of the contract, and as this is jurisdictional, an objection for the want of it may be taken to the bill for the first time on the submission for the final decree.

2. *Same; Repugnancy.*—A bill for specific performance is not open to objection as being repugnant to or variant from itself, or leaving the contract so uncertain as to preclude a decree for performance because alleging not only that complainant entered into a contract for purchase of the land at an agreed price to be paid $100 presently, and the balance in instalments of $200 each on certain dates, and that by the terms thereof, on the payment of said purchase price, respondent's ancestor was to execute to complainant a deed conveying title, but also alleging that at the first payment the ancestor signed and delivered to complainant the following written agreement: "Received of R. $100 on land purchased of E. this day, which leaves of the said purchase money $800 secured by notes and a mortgage on said land"; complainant being ready and willing to pay the balance of the purchase price.

3. *Frauds; Statute of; Sale of Land; Possession.*—Where the purchaser of land, although at the time in possession as the tenant of the vendor, on making the contract and the partial payment, proceeds to make valuable improvements by the erection of buildings and clearing the land, there is such a change of possession as to constitute the putting of a purchaser of land under an oral agreement in possession so as to satisfy the statute of frauds.

4. *Vendor and Purchaser; Time; Payment; Waiver.*—Even if time of payment is of the essence of the contract it is waived by the vendor giving indulgence in respect thereto and receiving payments after the time specified.

5. *Specific Performance; Refusal to Make Title; Pleadings and Proof.*—The averment and proof of a specific declination to execute title is not necessary to the equity of a bill for specific performance; its absence could only affect the question of cost.

6. *Same; Vesting Title; Decree.*—Where the land is within the jurisdiction of the court and subject to the laws of the state, the court by its decree will vest in complainant such title as has descended from the ancestor of respondents, where they are represented by solicitors, notwithstanding some of the respondents are incapacitated by the reason of infancy, and some are beyond the jurisdiction of the court to compel personal performance; the court thus executing the trust upon which respondents hold the legal title as a simple security for the payment of the purchase price.

APPEAL from Talladega City Court.

Heard before Hon. M. N. MANNING, Special Judge.

Bill by R. R. Roe and another against J. M. Eason and others, to compel specific performance, and to enjoin an action in ejectment pending the outcome of the present controversy. Decree for complainants and respondents appeal. Affirmed.

M. M. & VICTOR H. SMITH, for appellant. The averment, distinctly, definitely and precisely of the contract sought to be performed is jurisdictional in a bill for specific performance, and essential to the right of recovery, and may be taken advantage of at the final submission.—*Daniel v. Collins,* 57 Ala. 625; *Allen v. Young,* 88 Ala. 338; *Jones v. Jones,* 155 Ala. 644. The bill failed in this essential particular. The contract is not such as to take the case without the statute of frauds.—*Nelson v. Shelby M. Co.,* 96 Ala. 515, and authorities supra. All the parties who are joined as complainants must be entitled to recover or none can.— *Jones v. Reese,* 65 Ala. 134; *Taylor v. Robinson,* 69 Ala. 269; *Rector v. Barker,* 106 Ala. 240. There was never a delivery of the deed nor execution of the notes and mortgages, and hence, no contract.—*Hodges v. Sublett,* 91 Ala. 588; *Hammond v. Winchester,* 3 South. 892. The payments were not made at the time specified, and were not equal to the rental value of the land, and hence, did not authorize specific performance.—*Carlisle v. Carlisle,* 77 Ala. 339.

KNOX, ACKER, DIXON & SIMS, for appellee. The change of possession was such as to take the contract without the statute of frauds.—*City L. & B. Co. v. Poole,* 149 Ala. 164. The case was made out for the operation of the equitable doctrine of specific performance.

—*Ashurst v. Peck,* 101 Ala. 499; *Zirkle, et al. v. Ball,* 171 Ala. 568; 65 Am. Rep. 73. Time was not of the essence of the contract.—36 Cyc. 707-8; 39 Cyc. 1370. If it was, strict compliance was waived.—39 Cyc. sec. 84-5; *Zirkle v. Ball, supra; Davis v. Roberts,* 89 Ala. 408.

SAYRE, J.—This bill was filed by R. R. and William Roe against the heirs at law of J. M. Eason, and sought a decree in the nature of a decree for the specific performance of an alleged contract by which the said Eason had agreed to convey to complainants a certain tract of land in Talladega county. Eason's personal representative was also made a party defendant. Complainants further prayed that an action of ejectment, brought by defendants, be enjoined pending the suit in equity. Complainants had relief in the court below, and defendants appeal.

The bill, to state those parts of it about which the controversy turns, avers that complainants entered into an agreement with the ancestor of defendants for the purchase of the land on January 31, 1906; that the agreed purchase price was the sum of $900 to be paid $100 presently, the balance in installments of $200, due, respectively, on November 15th in the years 1906, 1907, 1908, and 1909; that "under and by the terms of said agreement or contract, upon the payment of said purchase price, the said J. M. Eason was to execute to complainants a deed conveying to them the title to said lands"; and that the cash payment was made as agreed, complainants being put into possession.

In a subsequent paragraph of the bill it is averred that at the time of the first payment Eason signed and delievered to complainants "the following written agreement," namely: "Received of R. R. Roe $100 on land purchased of J. M. Eason this day, which leaves

of said purchase money yet $800 secured by notes and a mortgage on said land. This 31st day of January, 1906. [Signed] J. M. Eason."

In the court below no objection was taken by demurrer to the form or equity of the bill. In this court defendants look for help mainly to those numerous adjudications which hold that in suits for specific performance the terms of the contract must be definitely and distinctly averred, as well as proved, to the end that the court be not left to uncertain inference in determining the rights of the parties. This objection is jurisdictional in its nature and may be considered, though taken for the first time on the submission for decree upon the facts alleged and proved, and so defendants insist that the averment of the receipt with its recitals, to which complainants refer as an agreement in writing, is an averment of a contract variant from that which we have above stated to be the contract upon which the complainants are proceeding for relief. But we do not take that to be the effect of the averment. Evidently complainants expected a defense under the statute of frauds, and it may be conceded that in framing their bill they showed some indecision as to the grounds upon which their contract was to be taken without the inhibition of the statute. There could be no harm, however, in meeting the anticipated defense on either or both grounds, provided, of course, the averment made to that end did not introduce a fatal uncertainty into the bill as to the essential terms of the contract itself. We do not find that the bill, in respect to the matter under consideration, is repugnant to, or variant from, itself, or that the contract alleged is so uncertain as to preclude the propriety of an equitable decree for its specific performance.

The receipt, if it be taken as a memorandum of the contract elsewhere alleged in the bill, is an incomplete and insufficient memorandum, and it may be that complainants must have failed in their suit if they had depended upon it alone to take their case without the statute of frauds; but the other answer to the statute, viz., that complainant had paid a part of the purchase money and had been let into possession, was perfect in the matter of averment and, as we shall see, in matter of fact. The averment as to the receipt, memorandum, or agreement in writing, in that part of it which refers to "notes and a mortgage," may be taken as a recital that the balance of the purchase money was secured by notes and a mortgage already executed and delivered; if so, it rested upon a misapprehension of the effect of what had been done, and was untrue in law and fact; or it may have been intended to witness an agreement that notes and a mortgage would thereafter be executed and delivered; if so, defendants by their subsequent dealing waived its performance. The substance of the alleged contract in any event was that complainants were to pay a certain price for the land, retaining the title as security for deferred payments, and that complainants, upon full payment, were to receive indisputable muniment of the rightfulness of the possession upon which they entered at once.

On the facts the case appears to be plain enough. Appellants, defendants below, complain of some of the witnesses that their professed recollection of occurrences and conversations, some four or five years past, and concerning a transaction of no particular interest to them, is unduly circumstantial, and of some of them that their testimony is so biased by their relation to the parties as to be untrustworthy. To our minds the testimony of most, if not all, of the witnesses is characterized by

unusual candor, and apart from some details, where their differences do not touch the essential equities of the controversy and seem to earmark the truth of what they say, their testimony is practically without conflict. The death of Eason and the consequent incompetency of the complainants to speak of the transaction with him, the death of J. M. Hare, the justice of the peace to whom Eason and the elder Roe went for the preperation of the papers which were to evidence the agreement, and the loss of such papers as he prepared, left complainants at some disadvantage in making the proof of their case. Nevertheless they have proved it by evidence of satisfactory weight and clearness. It is worthy of note in this connection that complainants demanded the specific performance now sought and made a tender of the balance of the purchase money, while both Eason and Hare were yet alive, and that Eason never thought to deny their right until he learned that the papers left with Hare had been lost or destroyed. Even then he did not deny the contract but seems to have proceeded on the theory that, since the papers were lost, the contract could not be enforced, and made this supposed status the basis for a claim of a sum in excess of that agreed upon. On the contrary, he had received payments from both of the Roes from time to time on the "land note." These payments were not made at the times nor in the amounts specified in the original contract, but were made nevertheless on the faith of the contract and in accordance with the averment of the bill, which is that they were so made on the request of Eason. In letters also written to one of the complainants, in his conversations with his neighbors and friends, and in his application to be placed on the state's pension roll, Eason repeatedly recognized the fact that he had bargained away the land in suit.

The terms of the original agreement are also clearly proved. In short, after due reflection upon the entire evidence, we are clear to these conclusions on the questions of fact involved: J. M. Eason and R. R. Roe negotiated for the sale and purchase of the land in suit, as a result of which it was agreed that R. R. Roe and his son, the complainant William Roe, who came into the agreement, would purchase the property on payments to be made as stated in the bill of complainant. It was further agreed that Eason should execute a deed upon the first payment being made; the Roes securing the balance by notes and a mortgage upon the land. Eason and the elder Roe went to Hare to have the papers prepared and executed, and Eason probably executed a deed, but, if so, it was not delivered; the completion, execution, and delivery of the documents, which together were to evidence the transaction, being deferred on account of the absence of the younger Roe and the wife of the elder. Nevertheless the first payment was made, and the Roes put into possession, or if, as defendants insist, the Roes retained a possession the elder Roe already had as a tenant of the vendor under a previous contract, still they proceeded to make valuable improvements by erecting a dwelling upon the land for the younger Roe, where there had been none before, and clearing up a considerable area of new ground for cultivation. These improvements indicated a change in the relation of the parties and were sufficient of themselves, and "without any other information or evidence, to satisfy a court, from the circumstances they have created and the relations they have formed, that they are only consistent with the assumption of the existence of a contract, the terms of which equity requires, if possible, to be ascertained and enforced."—*Maddison v. Alderson,* 8 App. Cas. 485. In connection with the

part payment this change of possession satisfied the
statute of frauds requiring that the vendee be put into
possession where there is a parol contract for the sale
of land, and a partial payment made, for equity acts
on the grounds that it would be fraud for the vendor in
such cases to allow the vendee to continue in possession,
expending his money in improvements, on the faith of
an agreement of sale, thus rendering it impossible that
the parties be restored to their original situations, and
then invoke the statute of frauds to avoid the contract.
*Nibert v. Baghurst,* 47 N. J. Eq. 201, 20 Atl. 252; 4
Pom. Eq. Jur. § 1409.   Thereafter, unquestionably, for
the space of nearly three years, the parties acted in per-
fect accord upon the understanding that there was a
contract for the sale and purchase of the property at
and for the price alleged in the bill of complaint, though
no deed nor any note and mortgage were delivered, as
the parties originally contemplated, and as the receipt
or memorandum perhaps assumed the case to have been;
complainants making, and defendants receiving, pay-
ments upon the common understanding that, when the
payments were completed, complainants would be en-
titled, by virtue of their agreement, to receive a deed
to the land.

Equity comes reluctantly to the conclusion that time
is of the essence of any contract, though, of course, it
may be made so by the express stipulation of the par-
ties, or that it is so may be implied from the very na-
ture of the subject-matter or from the surrounding cir-
cumstances.—*Cheney v. Libby,* 134 U. S. 77, 10 Sup. Ct.
498, 33 L. Ed. 818.   Stipulations as to time, like any
other, may be waived by the party for whose benefit
they are made.—*Davis v. Robert,* 89 Ala. 407, 8 South.
114, 18 Am. St. Rep. 126; *Zirkle v. Ball,* 171 Ala. 571,
54 South. 1000.   "The decisions proceed upon the the-

ory that the vendor cannot use his own indulgence as a trap to catch the purchaser."—39 Cyc. 1384, 1385.

Complainants allege that they have been at all times, and were at the filing of the bill, ready and willing to pay to defendants, the heirs of Eason, the balance due, on the puchase price of the land, upon their executing a proper conveyance, but that defendants have declined to receive the money and execute a deed, and have brought action at law for the recovery of possession of the land. Complainants have no proof of a specific declination on the part of defendants to execute title. That averment, however, and the proof of it, could only affect the question of costs and was unnecessary to the equity of the bill.—*Ashurst v. Peck,* 101 Ala. 509, 14 South. 541. Indeed, some of the defendants are incapacitated by reason of infancy, and some are beyond the jurisdiction of the court to compel personal performance. But the land being within the jurisdiction of the court and subject to the laws of this state, and the heirs of the deceased vendor present by their solicitors, the court by its decree will vest in complainants what title has descended to these defendants from their ancestor, thus executing the trust upon which they hold the legal title as a simple security for the payment of the purchase money, or will adopt other appropriate means to the same end.—44 Cent. Dig. tit. "Specific Performance," § 55.

It only remains to summarize our conclusion. It is that the original parties to the contract fairly and competently agreed together in substance that complainants should have the land upon payment of a certain price. The price has been paid in part as defendants' ancestor would have it paid; in other part it must now be paid as a condition to relief. On these facts com-

plainants are entitled to the relief awarded to them in the court below, and the decree must be affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.